UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RAILWAY INDEPENDENT TRANSIT UNION,

                      Plaintiff,                           14 CV 1361

          - against -                        **OPINION & ORDER**

PORT AUTHORITY TRANS-HUDSON
CORPORATION,

                      Defendant.
-------------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

On February 28, 2014, the Railway Independent Transit Union ("RITU" or "Plaintiff")

submitted an application for a temporary restraining order ("TRO") and preliminary injunction

enjoining the Port Authority Trans-Hudson Corporation ("PATH" or "Defendant") from

implementing the Port Authority of New York and New Jersey's Office of Medical Services

("OMS") Integrated Absence Program (see First Mem. of Law in Supp. ("RITU Mem."), ECF

No. 15), claiming the OMS program violates Article III, Section IV of the parties' Collective

Bargaining Agreement.  A hearing on the issue of the TRO was held before this Court on

February 28, 2014, at which PATH was present and opposed the TRO, but at which the TRO

was granted.  (See Tr. of Proceeding on Feb. 28, 2014 ("2/28/14 Tr.") at 24.)  The Court

scheduled a hearing on an Order to Show Cause to take place the following week, on March 6,

2014.  (Order to Show Cause, Feb. 28, 2014, ECF No. 9.)

On March 5, 2014, PATH submitted a memorandum and declaration in opposition to

RITU's application for injunctive relief, arguing that RITU had not met the criteria for an

injunction under the Railway Labor Act ("RLA").  (See Mem. of Law in Opp'n ("Opp'n

Mem."), ECF No. 14; Decl. of Kathleen Gill Miller ("Miller Decl."), ECF No. 13.)  PATH also

submitted affidavits from two PATH management employees in opposition to the injunction.
(Aff. of Robin Martin ("Martin Aff."), ECF No. 11; Aff. of Cynthia Bacon ("Bacon Aff."), ECF
No. 12.)  On March 6, 2014, a hearing was held at which three witnesses testified: Joseph
Dominiczak, the President of RITU and a witness for the Plaintiff; Robin Martin, the Medical
Services Director of the OMS for PATH and a witness for the Defendant; and Cynthia Bacon,
the Chief Negotiator for PATH and a witness for the Defendant.  (See Tr. of Proceeding on
March 6, 2014 ("3/6/14 Tr.").)

### I.     Factual Background

On February 28, 2014, PATH distributed a letter to all employees announcing an OMS
pilot program "designed to return employees to work more effectively and safely following an
absence due to an illness or an injury on duty," which stated, in relevant part, the following:

> Effective March 3, 2014, you will need to take the following steps on the first day of your
> absence:
>
> 1.  Contact your supervisor or designee to report your absence for departmental coverage
>     and timekeeping purposes.
>
> 2.  Contact the OMS Absence Call Center at 1-844-OMS-CALL (available 24 hours a
>     day / 7 days a week) to speak with a trained OMS Absence Representative who will:
>
>     • Ask you to provide basic information, including your name, your work
>       location, your supervisor's name, your employee number / badge number, and
>       the reason for your absence
>
>     • Offer specific direction regarding follow-up requirements related to your
>       absence
>
>     • Schedule an appointment for you to see an OMS representative, as appropriate
>
>     • Refer you to a nurse case manager from OMS (if indicated) who will offer
>       assistance with your recovery and return to work

(Pl.'s Ex. 2, Letter Announcing Integrated Absence Program, Feb. 28, 2014 ("Pl.'s Ex. 2")).

Union representatives had been given notice of the pilot program in a General Notice, dated February 26, 2014.  (See Pl.'s Ex. 3, General Notice, OMS Integrated Absence Pilot Program, Feb. 26, 2014, ("Pl.'s Ex. 3").)

On February 27, 2014, RITU filed a Grievance pursuant to the Railway Labor Act ("RLA"), claiming that the OMS Integrated Absence Program violates Article III, Section 4 of the Collective Bargaining Agreement between RITU and PATH.[1]  The dispute will ultimately be resolved in arbitration, and RITU currently seeks "preservation of the status quo . . . pending completion of the anticipated arbitration."  (RITU Mem. at 1.)

At the hearing held on March 6, 2014, Robin Martin, the Medical Services Director of the OMS for PATH, testified that, for at least the last 27 years, PATH has had a policy of soliciting information from and scheduling medical appointments for sick PATH employees "on the sixth day of absence."  (3/6/14 Tr. at 58-59.)  For the last three years, these phone calls and appointments have been the responsibility of Managed Care Advisors, an outside-contracted group that works under the direction of a PATH physician.  (Id. at 56-57.)

Ms. Martin testified that "[t]he only new requirement to [the new OMS] program is for employees to call off to our OMS centralized number on the first day of absence."  (Id. at 62.) She also testified that, during that call, employees will be asked by a Managed Care Advisors representative to provide basic information including their name, work location, supervisor's

---

[1] The relevant part of Article III, Section 4 of the Collective Bargaining Agreement reads as follows:

In case an employee is unavoidably kept from work he will not be discriminated against.  An employee detained from work on account of sickness or for any other good cause shall notify his Foreman promptly.  An employee failing to comply with this rule will be subject to discipline.

(Pl.'s Ex. 1, Agreement at 14.)  While the Court refrains from interpreting the contract—a matter which is left for the arbitrator in minor disputes such as this one—the Court understand this provision of the contract as intended to benefit the employer, who may require notice of absences for departmental coverage and timekeeping purposes.

name, employee badge number, and the reason for absence.[2]  Ms. Martin testified that employees "are not required to give that information" (id. at 63), but that testimony is not consistent with the letter and notice describing the program.[3]  Ms. Martin relied on the letter to employees describing the policy, which only says "ask," not that employees "will be mandated to provide" information.  (Id.)

Ms. Martin stated that the third bullet point on the letter describing the program, stating that an OMS Absence Representative will "schedule an appointment for you to see an OMS representative, as appropriate" is also required.  (Pl.'s Ex. 2.)  She testified that employees would have to see a physician or psychologist if directed to do so by the OMS (see 3/6/14 Tr. at 63), and that, as part of a "long-standing policy," OMS "would not schedule the appointment until the sixth day of absence." (Id. at 63-64.)  Ms. Martin testified that appointments would not be scheduled "until the sixth day of absence," under both the new and the old policies.  (Id. at 64.)

Ms. Martin acknowledged that PATH employees will be subject to "discipline if they fail to cooperate with the Office of Medical Services," and stated that this might occur "if we can't gain enough information when they call or when we call them, and we ask them to come to the Office of Medical Services in lieu of that, and then they don't." (Id.. at 74.)  According to Ms. Martin, the "requirement to cooperate with the Office of Medical Services" is a "part of the program that's always been in place."  (Id. at 72.)

Ms. Martin also testified about a meeting for union representatives, on February 26, 2014, at which she explained the pilot program prior to its implementation.  She testified that she

---

[2] Ms. Martin stated that Managed Care Advisors representatives were given scripts to follow.  (3/6/14 Tr. at 57.)  The scripts were not offered into evidence.

[3] Neither the General Notice of the OMS Integrated Absence Program, dated February 26, 2014, nor the Letter Announcing the Integrated Absence Program, dated February 28, 2014, state that PATH employees are not required to give information to the Managed Care Advisors representative.  Rather, the General Notice states that "all employees are directed to comply" with the new policy.  (Pl.'s Ex. 3.)

told union representatives "that the program requirements other than the immediate call-off to the central number were all the same as they had been and that those would remain in practice." (Id. at 66.)  She also testified to having told representatives that "the only other change would be that a nurse care manager would reach out to employees in order to help them if they needed help and that that was a voluntary part of the program."  (Id.)

RITU disputes Ms. Martin's testimony that the only new requirement of the pilot program is an additional call to OMS on the first day of an absence, arguing that the February 28, 2014 letter outlining the program does not state that any aspects of the program are voluntary. (Id. at 98.)  RITU argues that the new procedures are mandatory and create a burden on its members that requires immediate relief, prior to the arbitration, as RITU members will be "aggrieved [by the new policies] in a way that cannot be remedied."  (RITU Mem. at 3.)  RITU also points out that a previous arbitration award found that a new PATH policy requiring additional information from sick employees violated Article III, Section IV of the Collective Bargaining Agreement.  (See Pl.'s Ex. 5, Award in Docket Case No. 2, Public Law Board No. 6203 ("Pl.'s Ex. 5").)  RITU argues this previous arbitration award indicates a likelihood of success for RITU in the pending arbitration on the merits.[4]  (See 3/6/14 Tr. at 99.)

## II.     Legal Standard

In interpreting the RLA, the Supreme Court has recognized a distinction between "major" and "minor" disputes.  See Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 722028 (1945).  "If the dispute is major, the status quo is normally to be preserved pending the mediation process, but if the dispute is minor, a status quo injunction is appropriate only in those instances when it

---

[4] In the previous arbitration award, decided in 1998, it was found that a new PATH absence policy—requiring more than prompt notice to the foreman to report an absence—was "unduly intrusive and beyond the recognized requirement to keep the Carrier apprised of the employee's address of record."  (Pl.'s Ex. 5.)  The award granted RITU's claim and required PATH to "cease and desist from effectuating" the policy.  (Id.)

appears that its absence would prevent [the arbitration] from giving a significant remedy to the side that prevails." Local 553 Transport Workers Union of America, AFL-CIO v. Eastern Airlines, Inc., 695 F.2d 668, 675 (2d Cir. 1982). Both PATH and RITU agree that the dispute in this case is "minor." (See 2/28/14 Tr. at 4.)

In minor disputes under the RLA, courts have recognized a strong presumption that conflicts should be resolved outside the judicial system. See Int'l Ass'n of Machinists and Aerospace Workers v. Eastern Airlines, Inc., 826 F.2d 1141, 1145 (1st Cir. 1987). A court can issue an injunction to preserve the status quo in a minor dispute, so long as "the court's discretion is soundly exercised to preserve the primary jurisdiction of the Adjustment Board." Local Lodge 2144, Brotherhood of Ry., Airline and Steamship Clerks, Freight Handlers, Express, and Station Employees v. Ry. Express Agency Inc., 409 F.2d 312 (2d Cir. 1969). The purpose of a district court injunction in a minor dispute is "to preserve [the Adjustment Board's] jurisdiction by preventing injury so irreparable that a decision of the Board in the union's favor would be but an empty victory." Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 534 (1960). In 1982, the Second Circuit found that "[p]ersonal inconvenience is not the irreparable harm that warrants preliminary injunctive relief." Local 553, 695 F.2d at 677.

### III.   Discussion

The critical question in this case is whether RITU has made a showing of irreparable harm that amounts to more than a "personal inconvenience." See id. In this case, the irreparable harm standard is not met.

The Court notes that the evidence that was presented at the hearing on March 6, 2014 was not sufficient to establish that the new aspects of the program—in which sick employees are "ask[ed] to provide basic information" and "offer[ed] specific direction regarding follow up

requirements related to [the] absence"—are truly voluntary.  (Pl.'s Ex. 2.)  Although Ms. Martin

testified that "the only new requirement to this program is for employees to call off to our OMS

centralized number on the first day of absence" and that all other aspects of the program are

voluntary (3/6/14 Tr. at 62), she also testified that sick employees may be ordered to report to an

OMS physician or psychologist; that there is a long-standing requirement that PATH employees

"cooperate with the Office of Medical Services"; and that employees who fail to provide

adequate information when they call the centralized number can be ordered to report to OMS and

may be subject to discipline.  (Id. at 63, 72, 74.)  Because the letter describing the new program

to PATH employees does not state that any aspects of it are optional, employees may well feel

compelled to answer all questions and follow all directions from OMS, so as to avoid being

subject to discipline for a failure to cooperate.

 Notwithstanding the likelihood that RITU members will feel compelled to answer

questions and schedule appointments with OMS under the new program, RITU has not made a

showing of irreparable harm that amounts to more than a "personal inconvenience."  See Local

553, 695 F.2d at 677.  There has been no showing that RITU members will actually be subject to

discipline because of the new OMS program's requirements, even if they prefer not to share

private medical information over the phone, unless RITU members fail to cooperate with the

OMS in any capacity.  Moreover, RITU does not point to any case where a district court has

granted a preliminary injunction under similar circumstances.

 Finally, while RITU argues that "the burden [of the new requirement being imposed]

can't be undone" because "you can't un-call the phone call, you can't un-consult the

consultation, and you can't un-keep an appointment" (see 3/6/14 Tr. at 94), it is not the case that

a victory for RITU in the pending arbitration would be an "empty victory."  Brotherhood of

<u>Locomotive Engineers</u>, 363 U.S. at 534.  If the Adjustment Board ultimately decides the dispute in favor of RITU, the Board can order PATH to cease and desist from effectuating the program, as was done in the 1998 Award cited by the Plaintiff.  (<u>See</u> Pl.'s Ex. 5.)

**IV.    Conclusion**

For the reasons above, RITU has not met its burden to show irreparable harm, and RITU's request for a preliminary injunction will not be granted.  The TRO that was put in place by this Court on February 28, 2014 is hereby vacated.

IT IS SO ORDERED.

Dated: New York, NY
March 21, 2014

__s/s_____
Robert P. Patterson, Jr.
U.S.D.J.